```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

   CHARLES V. KLINGBERG, JR. and         1:17-cv-05563-NLH-AMD
   BRENDA KLINGBERG,
                                                **OPINION**
              Plaintiffs,

         v.

   LISA HATCHER, RON MIDDLETON,
   SCOTT OBERMEIER, DAVE
   WALLACE, and GLOUCESTER
   TOWNSHIP,
              Defendants.

**APPEARANCES:**

PETER M. KOBER
1864 RT 70 EAST
CHERRY HILL, NJ 08003
   *On behalf of Plaintiffs*

RICHARD L. GOLDSTEIN
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
15000 MIDLANTIC DRIVE - SUITE 200
P.O. BOX 5429
MOUNT LAUREL, NJ 08054
   *On behalf of Defendants Lisa Hatcher, Ron Middleton, Scott Obermeier, and Gloucester Township*

JESSICA ANN JANNETTI
OFFICE OF THE ATTORNEY GENERAL OF NJ
25 MARKET ST, 7TH FL, WEST WING
PO BOX 116
TRENTON, NJ 08625
   *On behalf of Defendant Dave Wallace*

**HILLMAN**, District Judge

   This matter concerns constitutional claims by Plaintiffs after they were detained for fifteen hours at a police station during an investigation into a fire at Plaintiffs' apartment.

After the investigation, no charges were filed.  Presently before the Court is the second motion of Defendant Dave Wallace, one of the investigators, to dismiss Plaintiffs' claims.  For the reasons expressed below, Defendant's motion will be granted.

**BACKGROUND**

A full recitation of the facts of the case may be found in this Court's prior opinion granting Defendant Dave Wallace's first motion to dismiss. (Docket No. 34.)  Previously, this Court dismissed Plaintiffs' claims against Wallace for lack of sufficient pleading.  Fed. R. Civ. P. 12(b)(6).  Plaintiffs subsequently amended their complaint.

Briefly stated, on January 27, 2016, Plaintiffs, Charles V. Klingberg, Jr. and Brenda Klingberg, were taken to the Gloucester Township police station to give a statement to aid in the investigation of a fire at their apartment.  They claim that they were not permitted to leave for fifteen hours.  With regard to Defendant Wallace's involvement in Plaintiffs' detention, Plaintiffs' second amended complaint alleges that Wallace, an investigator with the Camden County Prosecutor's Office,[1]

---

[1] Under New Jersey law, when a county prosecutor investigator performs law enforcement functions, he acts as an agent of the State, and the State must indemnify a judgment arising from his conduct.  Watkins v. City of Newark Police Department, 2018 WL 1306267, at *3 (D.N.J. 2018) (citing Hyatt v. Cty. of Passaic, 340 F. App'x 833, 836 (3d Cir. 2009) (quoting Wright v. State, 778 A.2d 443, 461-62, 464 (N.J. 2001)).

2

participated in interrogations of both Brenda Klingberg and Charles Klingberg. Plaintiffs claim:

> 45. Defendant, DAVE WALLACE, arrived at the Gloucester Township police department during the course of the afternoon while the detention of Plaintiffs was in progress.
>
> 46. After his arrival, Defendant, DAVE WALLACE, did not inquire of the Plaintiffs if they were present in the police station by their consent.
>
> 47. The failure by the Defendant, DAVE WALLACE, to inquire of the Plaintiffs if they were present in the police station by consent was deliberate indifference as to whether the Plaintiffs were present in the police station by consent or not.
>
> 48. Defendant, DAVE WALLACE, as an experienced detective, should reasonably have realized that if the Plaintiffs were not detained in the police station by their consent, their continued detention in the police station for purposes of interrogation and investigation was a violation of their constitutional rights.
>
> 49. If Defendant, DAVE WALLACE, had inquired of the Plaintiffs if they were present in the Gloucester Township Police station by consent, he would have learned that the Plaintiffs were not present in the Gloucester Township Police station by consent.
>
> 50. Upon learning that the Plaintiffs were not present in the Gloucester Township Police station by consent, in order not to be complicit in violating the Plaintiffs' constitutional rights, Defendant, DAVE WALLACE, needed to tell the Gloucester Township individual defendants that they needed to release Plaintiffs immediately, and that he would refuse to participate in any continuing interrogation of the Plaintiffs that was not done with their consent.
>
> 51. By not telling the Gloucester Township individual defendants that they needed to release Plaintiffs immediately, and by not stating that he would refuse to participate in any continuing interrogation of the Plaintiffs that was not done with their consent, Defendant, DAVE WALLACE, became complicit with the Gloucester Township

individual defendants in the continuing violation of Plaintiffs' constitutional rights.

(Second Amended Cmpl., Docket No. 36 at 4-5.)

Based on these allegations, Plaintiffs claim that Wallace, along with the other individual Defendants, unreasonably seized and detained them in violation of the Fourth Amendment of the U.S. Constitution and the New Jersey Civil Rights Act.

Wallace has again moved to dismiss Plaintiffs' claims against him because he is entitled to qualified immunity.[2] Plaintiffs have opposed Wallace's motion.

## **DISCUSSION**

### A. Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

### B. Standard for Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012). In order to determine whether a

---

[2] Wallace also argues that Plaintiffs have failed to meet the proper pleading standard to state a viable claim against him. Because the Court will find that Wallace is entitled to qualified immunity, the Court need not consider his alternative basis for dismissal.

4

government official is entitled to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct? Pearson v. Callahan, 555 U.S. 223, 236 (2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id.

**C. Analysis**

Plaintiff's factual allegation against Wallace are straightforward and clear. Wallace arrived, Plaintiffs allege, after they were detained. (Docket No. 36 at para. 45.) Wallace did not ask them if they were present by consent and his failure to do so amounted to deliberate indifference to their status at the police station. (Docket No. 36 at para. 46-47.) Elsewhere in Plaintiffs' second amended complaint, they allege the other officers had detained Plaintiffs unlawfully. Under Plaintiffs' theory of liability as it relates to Wallace, if he had not been deliberately indifferent and asked the Plaintiffs whether they were present in the police department by their consent, he would have learned of their illegal detention. (Docket No. 36 at para. 49.) And if he had learned of their unlawful detention, he should have declined to participate in the interrogation and directed the Gloucester Township police officers to release them

5

immediately.  (Docket No. 36 at para. 50.)  But because he did not ask, he did not know,[3] and therefore his inaction made him complicit in the violation of Plaintiffs' constitutional rights by the other officers.  (Docket No. 36 at para. 51.)

Plaintiffs, however, have failed to cite to any legal authority to support their "duty to inquire" theory of liability against Wallace.  The closest analogy to Plaintiffs' theory is when an individual is detained but not technically under arrest.  For example, in Dunaway v. New York, 442 U.S. 200, 212–13 (1979), Dunaway was "taken from a neighbor's home to a police car, transported to a police station, and placed in an interrogation room.  He was never informed that he was 'free to go'; indeed, he would have been physically restrained if he had refused to accompany the officers or had tried to escape their custody."  The Supreme Court found Dunaway's detention to violate his Fourth Amendment rights, and distinguished Dunaway's detention from a permissible brief investigatory stop.  Dunaway, 442 U.S. at 212 (citing Terry v. Ohio, 392 U.S. 1 (1968)).  The Supreme Court explained that "the application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of this magnitude is termed an 'arrest'

---

[3] Plaintiffs do not plead that even without asking Plaintiffs it would have been obvious to Wallace that they were not there voluntarily.

6

under state law," and the "mere facts that petitioner was not told he was under arrest, was not 'booked,' and would not have had an arrest record if the interrogation had proved fruitless, while not insignificant for all purposes, obviously do not make petitioner's seizure even roughly analogous to the narrowly defined intrusions involved in Terry and its progeny." Id. The Supreme Court therefore held that "detention for custodial interrogation - regardless of its label - intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." Id. at 216. This is in essence the claim Plaintiffs bring against the other officers.

The problem with Plaintiffs' claims against Wallace, however, is that they do not allege he personally restrained their liberty impermissibly.[4] Rather, they allege that Wallace, separately and additionally, had an affirmative duty to ask them or the other officers if Plaintiffs were detained within the parameters of the Fourth Amendment. It is important to note here, again, what Plaintiffs do not allege. They do not claim that Wallace should have known without asking that they were not

---

[4] In contrast, Plaintiffs allege that Charles Klingberg asked Defendant Gloucester Township investigator Lisa Hatcher if he could leave the police station, and Hatcher responded that he could not. Plaintiffs also allege that Brenda Klingberg asked to make a phone call, and Lisa Hatcher said she was not entitled to a phone call. (Docket No. 36-1 at 4.)

7

there by their consent nor do they allege that Plaintiffs at any time before, during, or after their interrogations told Wallace they were being detained without their consent.

Plaintiffs' theory is without foundation in the law. Plaintiffs fail to cite a single case that supports the notion that a county investigator, who arrives at a local police station to interview individuals who were detained by the local police, has a *sua sponte* duty, without any indicia that a Fourth Amendment violation was occurring, to inquire whether those individuals were being held against their will, especially when neither of those individuals tells the investigator that they want to leave. Under Plaintiffs' theory, any investigator brought in to assist in an investigation would be required to question the legality of a person's detention and conduct a mini-investigation of his fellow officers before going about his or her law enforcement duties.

The fact that neither Plaintiff nor this Court can find any basis in the law for this purported "duty to inquire" demonstrates that such a duty does not exist. As the Court's research reveals, the only instance where courts have found that a police officer has a duty to inquire are limited to those where there is a question of third-party authority to consent to a search. See, e.g., Illinois v. Rodriguez, 497 U.S. 177, 188–89 (1990) (finding that an officer is entitled to conduct a search

8

without further inquiry if "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises").

The key, therefore, to the duty to inquiry theory, at least in the context of third-party consent to searches, is reasonableness – i.e., "The presence of consent is judged under a standard of objective reasonableness."  Mitan v. United States Postal Inspection Service, 656 F. App'x 610, 614 (3d Cir. 2016) (citing Rodriguez, 497 U.S. at 188); see also United States v. Terry, 915 F.3d 1141, 1145 (7th Cir. 2019) ("As one treatise puts it: 'sometimes the facts known by the police cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.'" (citing 4 Wayne R. Lafave, *Search and Seizure* § 8.3(g) (5th ed. 2018)).

In this case, if the Court were to analogize Plaintiffs' duty to inquire theory with the consent-to-search theory, Plaintiffs have not alleged any facts that "cry out for further inquiry" to confirm Plaintiffs were being properly detained, either by consent or by probable cause.  Nothing in the facts suggest that Wallace acted unreasonably.  Indeed, Plaintiffs make no claim that Wallace was ever aware that Plaintiffs were

not there voluntarily.[5]

More importantly, however, for the qualified immunity analysis, is that in order to hold Wallace liable for a Fourth Amendment violation based on Plaintiffs' theory, it would require Wallace to understand that he had such a duty. The Third Circuit recently addressed the "clearly established" prong in assessing the qualified immunity defense at the motion to dismiss stage in a case concerning constitutional claims against police officers arising out of a high speed chase. See Sauers v. Borough of Nesquehoning, 905 F.3d 711, 719 (3d Cir. 2018). The Third Circuit explained,

> A right is clearly established when the law is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotation marks, citation, and alteration omitted). That does not require a prior precedent with indistinguishable facts, "but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Existing precedent is sufficient to place a constitutional question beyond debate and to defeat qualified immunity only if it is "controlling authority in [the relevant] jurisdiction," Wilson v. Layne, 526 U.S. 603, 617 (1999), or if "a 'robust consensus of cases of persuasive authority' in the Court of Appeals" has settled the question, Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting Taylor v. Barkes, --- U.S. ----, 135 S.Ct. 2042, 2044, (2015)).

---

[5] If Wallace has been aware that Plaintiffs were being held against their will and proceeded to interrogate them and otherwise be complicit in their illegal detention, that may be a different case – but a case not pleaded here.

10

> When qualified immunity is at issue, context matters. The "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Mullenix v. Lunda, 136 S. Ct. 305, 308 (U.S. 2015) (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)(per curiam)). When courts fail to take into consideration the "particularized" facts of a case, they permit plaintiffs "to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." White v. Pauly, 137 S. Ct. 548, 552 (U.S. 2017) (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 639-40, (1987)).

Sauers, 905 F.3d at 719.

The Third Circuit applied this standard in assessing the second prong of the qualified immunity analysis to the facts pleaded in the plaintiff's complaint, and found that the defendant officers were entitled to qualified immunity because the law was unsettled as to whether police officers engaged in a police pursuit could be subject to constitutional liability for a level of culpability less than intent to harm. Id. at 723. The Third Circuit concluded, "Although the state of the law in May 2014 was unsettled as to whether police officers engaged in a police pursuit could be subject to constitutional liability for a level of culpability less than an intent to harm, our opinion today should resolve any ambiguity in that regard within this Circuit." Id.

Here, Plaintiffs' novel "duty to inquire" theory advanced against Wallace does not meet the standard for a clearly

11

established right.  Not only is there no "controlling authority" or a "robust consensus of cases of persuasive authority" on Plaintiffs' theory, the duty to inquire as pleaded by Plaintiffs does not exist at all in the law.  "It is only when both the theory of liability and its application to the established facts are sufficiently plain that the legal question of liability is beyond legitimate debate and a plaintiff can defeat a qualified immunity defense."  Sauers, 905 F.3d at 719.  Plaintiffs have not met that standard.

Consequently, the Court will dismiss Plaintiffs' claims as currently pleaded against Wallace with prejudice because he is entitled to qualified immunity.[6]  An appropriate order will be entered.

Date:  April 18, 2019_            ___s/ Noel L. Hillman___
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

[6] See, e.g., Werkheiser v. Pocono Tp., 780 F.3d 172, 176 (3d Cir. 2015) (granting defendant's motion to dismiss, finding the defendant entitled to qualified immunity because the law defendant allegedly violated was not clearly established, and dismissing those claims against the defendant with prejudice); Cresci v. Aquino, 2017 WL 1356322, at *10 (D.N.J. 2017) (same); Barron v. New Jersey, 2018 WL 324725, at *3 (D.N.J. 2018) (same); see also Roth v. City of Hermitage, 709 F. App'x 733, 736 (3d Cir. 2017) (explaining that a court must assess a motion to dismiss based on qualified immunity so that it can be determined whether claims should be dismissed with prejudice prior to assessing other bases for dismissal which would only provide a dismissal without prejudice).  This finding does not preclude claims against Wallace that are substantively different from those dismissed with prejudice should discovery reveal facts to support a different claim.